JACOB SMITH, JOHN MATTHIAS, JOHN GEORGE SCHLEICH, JOHN M. KEYSER, ABRAHAM SITLER, JOHN NEIBERGALL, SEN., JOHN SEPPEL, JOHN SCHMIDT, SEN., LEWIS WEIS AND FREDERICK AHLSLEGER, *vs.* JACOB ERB, DANIEL ZERWIG, JACOB SCHWARTZ, SAMUEL SOMMERS, ADAM DAUB, FREDERICK KRAFT, MICHAEL FREY, JACOB GRESSLE AND FREDERICK FAUTH.—*December* 1846.

The charter of a religious corporation required, that at all meetings of the elders and trustees, the minister, for the time being, should be president of the vestry; that the male members should meet on the 1st Monday of, &c., or within ten days thereafter, to elect elders and trustees, at their church, &c. Notice to be given by the president on the Sunday preceding the day of that meeting, to elect from members, by ballot, four elders for

one year, and until another election should be made ; and also to elect four other members, as trustees. When elders and trustees were to be appointed, those for the time being, should, at least eight days before the election, nominate double the number of those, so to be elected. The property of the corporation was vested in the elders and trustees. In 1842, a difference arising in the congregation, at January 1843, two sets of officers were elected : one set adhering to the minister and president, were elected with his nomination. The other, appointing afterwards, in 1843, another minister and president, had also kept up a succession ever since. The election in 1842 was admitted to be valid. HELD : that even if the election in 1843 be invalid, still, as those elections which occurred afterwards, from 1844 to 1847, were made upon the notice of the minister and president, duly given, the irregularity of 1843 could not be relied upon, to impeach their validity ; nor could those elders and trustees, who were petitioners, and elected without the notice required by the charter, claim the interference of the court, by *Mandamus*.

To constitute a valid election, notice should be given by the president of the vestry, in conformity to the charter.

A *Mandamus*, is not a proper remedy to restore a rightful vestry, to the possession of church property, wrongfully withheld.

One writ of *Mandamus* cannot issue for the enforcement of separate claims.

Even if parties at one time were entitled to a writ of *Mandamus*, still, if by lapse of time, or subsequent circumstances, they are not entitled to it when it is claimed to be awarded, it will not be granted.

Where an election for officers of a corporation is had, and officers *de facto* are elected, and act, they are presumed to pursue the legal preparatory measures for an election for the next year ; which when had, makes the successors, officers *de jure*.

APPEAL from *Baltimore* county court.

On the 9th October 1845, the appellants, as relators, filed their petition for a *Mandamus* against the appellees, alleging : that a congregation for religious worship, was incorporated, by the name of " *The Elders, Trustees and Members, of the German Evangelical Reformed Church in the City of Baltimore,*" by act of the November session 1797, chap. 52 ; that by said act, persons are to be appointed elders and trustees of said congregation ; four elders and four trustees to be elected at stated periods, and after nomination to be made by the elders and trustees in authority, a certain period before the election to be made ; that by said act the said elders and trustees are combined, as a collective authority or vestry, of which the minister of said congregation,

for the time being, is by said act constituted the president; that the said elders and trustees, and their president, are the managers and guardians of all the concerns of said corporation and congregation, in its temporal affairs and interests, as well as in reference to its good order and government; that the said corporation was governed, accordingly, by the said elders and trustees, as a vestry, as aforesaid, and their president, until January 1842, when one *Jacob Erb* was elected the minister of said congregation, and the following persons were duly elected elders and trustees respectively thereof, to wit : *Frederick Ahlsleger, &c.,* elders, and *William Raine, &c.,* trustees; all which elders and trustees, and the said minister, accepted their respective appointments, and exercised their offices, which, in the cases of the elders and trustees, were to continue for one year, *and until successors to them should be duly elected;* that said corporation own, &c.; that said elders and trustees, went on superintending the temporal interests, and guarding the good order of the said congregation, and so would have concontinued to fulfil the requirements of their stations; but your petitioners state, that in this peaceable and useful course of duty, certain of said elders and trustees became obnoxious to the said minister, and to others, who instigated factious disturbance in the congregation, to involve, and thwart, and overthrow, the said elders and trustees. And your petitioners state, that pursuing this hostility to said obnoxious elders and trustees—who were the said *William Raine,* and *John Schmidt, Sen.,* and *Lewis Weis, Frederick Ahlsleger* and *Geo. Kraft*— the said minister, confederating with others of like vindictive temper, preferred, or procured to be preferred, against said elders and trustees, just named, various charges, in most instances frivolous, and had the parties illegally, and without regard to the forms and privileges of fair trial and deliberate discussion, arraigned before the congregation, or a small portion of it, constituting far less than a majority of the congregation, and irregularly assembled; and so, in the midst of excitement and tumult, and upon the assumed authority of that small body, (a large proportion even of them refusing to vote on the occasion,) the said elders and said trustees, were declared to be removed

and expelled from their respective offices aforesaid, and from membership of said congregation; that this attempted deprivation and disfranchisement, was accomplished by successive procedures of the character and tenor just described, *W. R.* being first charged and deposed, and after him, *J. S.*, *Sen.*, being charged, and then said *F. A.*, and *L. W.* and *G. K.*, and finally, the said *Schmidt*, *Sen.*, and *Ahlsleger*, and *Weis* and *Kraft*, being, by one resolution, proscribed and dismissed as elders and members.   That the said *John Schmidt*, *Sen.*, who was a trustee, as they have represented, was alleged to have resigned his said office, at a period before the prosecutions, above mentioned, began; which proceedings began and ended between the months of June and September, each inclusive, in the year 1842; but your petitioners believe, and on that belief charge, that if any actual and valid resignation came from said *Schmidt*, *Sen.*, it was urged by said minister, *Erb*, and enforced by his own influence, unduly exerted; or by other unfair agency, which he promoted or set in motion; that after that pretended resignation was submitted to the congregation, a certain *Frederick Fauth* was, without due notice of election, or a sufficient interval after his alleged nomination, chosen to the place of said *S.*, *Sen.*, as trustee; and so your petitioners show, that even if the seat of said *S.*, *Sen.*, was vacated, as trustee, by effectual resignation, it was not duly and validly filled; and your petitioners aver, therefore, that if said place were vacated in manner aforesaid, it continues vacant; and that said *Fauth*, who undertook, and intruded himself into the duties and authority of it, unlawfully exercised the said office. And your petitioners therefore allege, that said *Fauth* was irregularly and injuriously imposed upon the proper and constitutional elders and trustees of the congregation, and, as they verily believe, as one less offensive to the views, and more pliant to the plans of said minister, than said *Schmidt*, *Sen.* was, or was likely to be; that after the expulsion of said *Raine*, and of said *A.*, *S.*, *Sen.*, *W.*, and *K.*, a pretended election, for others in their place, was held, without the form of a due nomination, or of a sufficient interval between nomination and election, as enjoined by the charter of said congregation; that under the pretence of such election, the

following persons were declared elected to the places of said wronged officers, and were sought to be foisted into said offices, to wit: *Michael Frey*, as a trustee, and *Adam Daub, Daniel Zerwig, Jacob Schwartz*, and *Samuel Somers*, as elders; that said *F. F., M. F., A. D., D. Z.*, and *J. S.*, and *S. S.*, intruded into said offices of trustees and elders, respectively, after said pretended elections, and under color and pretext thereof, assumed to perform the duties, and exercise the authority of said offices in combination with said *Jacob Gressle* and *Frederick Kraft*, who connived at the usurpation; and to the denial and exclusion of said *Raine*, and *Ahlsleger*, and *Weis*, and *George Kraft*, and *Schmidt, Sen*. That at the juncture just mentioned, proceedings in equity in your honorable court, (the bill in which has been dismissed by this court,) were instituted to restrain the interference of said pretended and intruding elders and trustees, and so to bring into actual authority and control, the unduly ousted trustee and elders aforesaid. And your petitioners state, that soon after said proceedings were instituted, the church of said congregation, the stated place of their worship, was, by assent of the parties to the litigation, closed, to await the determination of the issues between the parties. And your petitioners state, that thus, and by the controversy aforesaid, the congregation separated into two divisions, one adhering to the minister *Erb*, and the intruding elders and trustees aforesaid, and said *Gressle* and *Frederick Kraft*, and the other presided over and kept in due and legal organization by said elders and trustee who had been attempted to be deposed as aforesaid. That after proper nomination made, on due notice to said *Gressle* and *Frederick Kraft*, and to said minister *Erb*, and after the lapse of the chartered period from the nomination, the congregation whose organization was thus legitimately preserved, elected in January 1843, after the expiration of the official year of the said elders and trustee legally in authority, the following persons, being members of said congregation, as elders and trustees respectively, to wit: as elders, *L. W., J. S., John S., Sen.*, and *G. K.*, and as trustees, *F. A.*, and *W. R., J. H.*, and *John Magnus Keyser*. And your petitioners further show, that after notice,

56    v. 1

which they insist was competent, the said congregation, after a due nomination, elected a minister of the congregation incorporated as aforesaid, the *Reverend Samuel Gutelius* in January 1844. That said elders and trustees, and minister, just mentioned as elected as aforesaid, accepted their respective offices and exercised the same; that the persons composing the other and unlawful division aforesaid, of said congregation, have, by pretext and form of election, chosen persons as elders and trustees at two periods, and have sought and pretended to continue in office as minister of the said incorporated congregation, the said *Jacob Erb*, who yet claims said office as minister, and affects to use the said office, and claim all the authority and control thereof. And your petitioners state, that since the unlawful ouster aforesaid, of said elders and trustee, the persons who have intruded into said offices, and have claimed, and some of whom still claim the functions, authority and privileges thereof, are *Daniel Zerwig*, *Jacob Schwartz*, *Samuel Sommers*, *Adam Daub*, pretending to the eldership, and *Frederick Kraft*, *Michael Frey*, *Jacob Gressle*, and *Frederick Fauth*, pretending to the trusteeship of said congregation; that the lawful authorities of said corporation and congregation, are thus interfered with and intruded upon in their respective offices and trusts; and they state that thereby, and in consequence of this conflict of pretension, and the encroachment, and threatened trespass of the said pretended elders and trustees, and minister, the said incorporated congregation are excluded from the use of their church building, and the worship there designed by the charter to be conducted, and for the enjoyment of their other real and other property; and the lawful elders and trustees, and minister of the congregation, are debarred their exercise of their offices, and duties, and trusts, and the object of said incorporating enactment is jeoparded or suspended, and the trust of said elders and trustees made idle and nugatory for all the ends of said enactment. And your petitioners are, by said intrusion and usurpation, compelled to seek the aid of your honorable court, for restraining and prohibiting by your writ of *Mandamus*, the said *Jacob Erb*,

*Daniel Zerwig, Jacob Schwartz, Samuel Sommers, Adam Daub, Frederick Kraft, Michael Frey, Jacob Gressle,* and *Frederick Fauth,* from, in any form, or by any act whatsoever, continuing their said intrusion and usurpation, and from in any wise claiming or interfering with the offices aforesaid, of minister, and elders, and trustees respectively, and from in any manner interrupting in the authority and exercise of said offices, the said *Samuel Gutelius,* as minister aforesaid, and of said *Lewis Weis, Jacob Smith, John Schmidt, Sen.,* and *George Kraft,* as elders, and said *Frederick Ahlsleger, William Raine, Jacob Heinmuller,* and *John Magnus Keyser,* as trustees; or if these last named persons should not be deemed by this honorable court, duly elected and in authority, then that in manner aforesaid may be protected in office as aforesaid, and restored to the full and undisturbed exercise thereof, the said *Frederick Ahlsleger,* and *Lewis Weis,* and *George Kraft,* and *John Schmidt, Sen.,* as elders, and said *William Raine,* as trustee; and that in either case, the said *Jacob Gressle* and *Frederick Kraft* may, by said writ of *Mandamus,* be alike prohibited and restrained as aforesaid, from impeding the lawful officers aforesaid, in the exercise of their offices respectively, and from combining with said intruding and usurping persons as aforesaid, in excluding, or seeking, or attempting to exclude, said lawful officers from the possession and exercise of their respective offices; and that this court may, by any other terms and requirements, to be directed and contained in said writ of *Mandamus,* enforce and ensure the peaceable and effectual exercise of said offices by the lawful officers aforesaid, against the acts and pretensions of said intruders and usurpers. And they pray, if it should appear that the right of said officers, or of any of them, to the relief now sought in their behalf, is so doubtful as to require such order of this court, that a new election, so far as any such doubt may make it needful, may, by said writ of *Mandamus,* be directed to be held in said congregation, in manner and at a time to be specified by this court, in respect of said ministry of the congregation, and of said eldership, and trusteeship, or of any of said parts of the government of said corporation. And your

petitioners, now suing for this protection and vindication of religious and corporate rights and privileges, in behalf of themselves, and all other members of said congregation alike aggrieved and affected, aver, that at the period of the election aforesaid, of said *Raine* as trustee, and of said *Ahlsleger*, and *Weis*, and *George Kraft* and *John Schmidt*, *Sen.*, as elders, and from a time long before your petitioners were, and have continued to be members, duly admitted and entitled of said congregation. That said *Erb* was, as aforesaid, elected in January 1842, as minister of said congregation, to serve from June 1842, until the meeting of the conference 1843, of the denomination of christians called the *United Brethren in Christ;* which meeting your petitioners believe took place in March, in the last mentione l year; and so your petitioners aver the said *Erb*, ceased iu March, in the year eighteen hundred and forty-three, to be minister of the said congregation.

And your petitioners state, that it will appear to this court by reference to the constitution aforesaid, that a minister to said congregation can be elected only upon nomination of a candidate or candidates for the office, to the congregation, by the elders and trustees aforesaid. That no valid election of said *Erb*, as minister for any term succeeding his expiration of office in the month of March 1843, has ever taken place, and that by no competent body of elders and trustees, and in compliance with no requisite forms and procedure, was said *Erb* ever after the period aforesaid nominated or elected; and thus showing the utter nullity of any continuing pretensions of said *Erb* to the ministry aforesaid, here aver, in further specification of the irregularities and unwarranted assumptions of said *Erb*, that said *Erb* holds possession of, and inhabits, the parsonage of the congregation, and that he and his adherents aforesaid, among the intruding elders and trustees aforesaid, claim, and as these petitioners believe, receive the rents of the stable of the parsonage establishment, and of the schoolhouse aforesaid, belonging to the congregation. That the dismission of said elders and said trustee, complained of herein, was especially irregular

and invalid, because, the power of hearing and trying any charges against elders and trustees and of removing them from office, and of in like manner removing any from membership of the said congregation, is lodged in the vestry aforesaid of the church, and does not belong to the congregation. And in support of the allegations of this petition, connected with the government and authorities of said congregation and corporation, your petitioners pray reference, when they shall be produced by them, to the constitution and rules of said' congregation, as well as to the charter already referred to; and pray that when produced they may be deemed a part of this petition : Whereupon now your petitioners do pray your writ of *Mandamus* to the ends aforesaid, and to be directed as stated, and, in addition to the requirements therefor suggested as aforesaid, enjoining and commanding the delivery to the lawful elders, and trustees, and ministers, as aforesaid, and as insisted and shown by your petitioners, of the said parsonage, and schoolhouse and stable, and of all other property of said corporation. And your petitioners pray accordingly all due and appropriate rules of this honorable court, for and toward the writ of *Mandamus*, and that the same, in terms as this court may order, be directed to said *Jacob Erb*, &c., all residing in the city of Baltimore.

This petition was verified by affidavit.

The county court, (PURVIANCE and LE GRAND, A. J.,) on 9th October 1845, ordered, that the said *Jacob Erb*, &c., show cause, on or before the 25th of October, inst., why a *Mandamus* should not issue, as prayed by the above application; provided, &c.

On the 18th December 1845, the county court also ordered, that an alternative *Mandamus* issue, according to the within application; no cause having been shown to the contrary thereof, although notice was given of said application, by service of a copy and of the order of this court of the 9th October last, agreeable to the exigency of said order. Said *Mandamus* to be made returnable on the first day of the next term of this court.

Accordingly, an alternative *writ of Mandamus* was issued, as directed. To this writ the defendants made a very elaborate return, upon which the petitioners framed a variety of issues.

The issues, and the opinion of this court, and verdict, sufficiently show, what facts were in controversy.

The relators objected to the return :—

1st. That the return, and the matters therein contained, are insufficient in law, to bar or preclude them from having a peremptory *writ of Mandamus*, in this behalf, for plea to the said return, they, by force of the act of Assembly, in such case made and provided, say that, &c.

The 2nd, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 12th, 13th, objections of the relators to the return of the writ, related to the hearing, trial and defence of *Raine,* as to the alleged charge of his having two wives; the judgment of the elders and trustees thereupon; the direction to notify *Raine* of the intended trial; legality of the meeting of the congregation for that object; and that he was not guilty.

14th. They deny that said *Raine* made erasures in the church books, as in that behalf is alleged in said return.

15th. They deny that said *Raine* made false entries, or any false entry in the church books, as in that behalf is alleged in said return.

The issues, from the 15th to the 25th, inclusive, were lost.

25th. They deny that said *Erb,* in said return named, endeavored to have certain of the charges, in said return stated as having been alleged against him, investigated by the board of elders and trustees, as in that behalf is in said return alleged.

26th. They deny that any meeting or meetings of said board of elders and trustees was, or were ever called by the said *Erb,* for the investigation of said alleged charges, as in said return is in that behalf alleged.

27th. They deny that any notice was given to said *Schmidt, Sen.,* said *Ahlsleger,* said *Weis,* and said *George Kraft,* of any of the alleged meetings of said board of elders and trustees, alleged to have been called for the purpose of investigating said alleged charges against said *Erb,* as in said return is in that behalf alleged.

28th. They deny that said *Schmidt*, *Sen.*, said *Ahlsleger*, said *Weis*, and said *George Kraft*, neglected or refused to attend any alleged meetings of the board of elders and trustees, called by said *Erb*, for the investigation of alleged charges against said *Erb*, as in said return alleged.

29th. Protesting that the board of elders and trustees had not lawful power, or competent authority, to refer to a meeting of the said congregation the matter of said alleged charges against said *Erb*, and the alleged matter of the conduct of said *Schmidt*, *Sen.*, said *Ahlsleger*, said *Weis*, and said *George Kraft*, in their alleged refusal or neglect to attend the alleged board or vestry meetings, as stated in said return; and further protesting, that said *Erb*, *Gressle*, *Frederick Kraft*, *Frederick Fauth*, and *Michael Frey*, had not lawful power or competent authority in the premises, they deny that *Erb*, *Gressle*, *Frederick Kraft*, *Frederick Fauth*, and *Michael Frey*, at a meeting of the board of elders and trustees, held on the 5th day of September 1842, referred the said alleged matters to a meeting of the said congregation, to be held on Monday evening the 12th day of September, in the year 1842, and directed public notice to be given by said *Erb*, on the next succeeding Sabbath, of the said alleged meeting, and of the time, place and object for which it was called, as alleged in said return.

30th. They deny that said *Erb* gave notice, on the 11th September 1842, as in the said return is alleged, that a meeting of said congregation would be held on the 12th September 1842, and that he stated the object for which said meeting was alleged to be called.

31st. They deny that a meeting of the said congregation, assembled, and was held on the 12th September 1842, as alleged in said return.

32nd. They deny that said *Erb*, at said alleged meeting of said congregation, on said 12th September 1842, preferred the charges against said *Schmidt*, *Sen.*, as in said return alleged.

34th. They deny that said *Schmidt*, *Sen.*, on retiring from said alleged meeting, on said 15th September 1842, stated, as alleged, that he would have nothing more to do with that congregation from that date, and thereupon immediately retired from said meeting, as in said return is alleged.

51st. They deny that said alleged meeting of legal voters on said 27th September 1842, fully heard and considered all the statements and proofs which the said *Ahlsleger*, *Weis* and *Geo. Kraft*, had made in relation to said alleged charges against them.

And all matters not herein specially traversed, they pray may be enquired of by a jury, according to the act of Assembly in such case made and provided; and of, and in respect of all such matters and things traversed, and each of them, they put themselves upon the country, &c.

These issues were severally found for the defendants, except the 14th, which was found for the relators.

The parties submitted the case, each claiming judgment. The court decided the 12th and 13th issues for the defendants; and that *Raine* was guilty of adultery, as alleged in the return.

On the 1st December 1846, the county court, (LE GRAND, A. J.,) refused the application on the grounds following :—

The conclusion to which my mind has been brought, after as full and deliberate a consideration as I could give to the facts in this case, and to the arguments of the counsel who have so ably discussed it, dispenses with the necessity of deciding any, *but one, of the many questions* which are involved in it. But supposing the parties desirous of knowing the opinion of the court, in regard to some of the other questions, it will be briefly stated; without, however, undertaking to support it by argument.

The court is of opinion :—

1st. That there is resident in this corporation, to wit, in the body at large, a power to amove or disfranchise; that this inherent, or incidental power of amotion, is not, as was argued by counsel for relators, expressly confined to the vestry, either by the charter, constitution, or by-laws of the corporation. Rule No. 14, of those adopted in the year 1814, only gives to the consistory in certain cases, the power of excluding members from the congregation; it does not confine the power of amotion to the consistory, and not doing this, it resides in the corporation at large. *Wilcock*, sec. 3, p. 629.

2nd. That the congregation had, (looking to the charter, and object of the corporation,) jurisdiction of the matter charged against *Raine*, independently of his desiring the exercise of it, as has been found by the jury; the offence charged against him has a double aspect:—first, it was indictable by the laws of the land; and secondly, it was against his duty, as a member of a religious corporation. This being so, it was not necessary he should have been first convicted by a jury. 2 *Binney*, 448.

3rd. That, although the return does not show, *in express terms*, he was convicted of the charge, yet it does show there was but one matter preferred against him, to wit : "the matter of his two wives ;" that he was heard in his defence, and by the congregation, after such hearing, voted out. It showed the charge, defence, and judgment, *and*, therefore, it is what is termed in the law, a violent presumption that he was convicted.

4th. That *John Schmidt, Jr.*, and *Lewis Weis*, resigned their respective offices, and their resignations were accepted.

5th. That *George Kraft* having joined the *Methodist Episcopal Church*, (although improperly removed,) has ceased to be a member of the *German Evangelical Reformed Church*, and is therefore incompetent, legally so, to hold an office of any character of this corporation.

6th. That *John Schmidt, Sen.*, and *Frederick Ahlsleger*, were improperly amoved. Not because the congregation had no jurisdiction against the charges preferred against them, but because of the uncertainty of the proceeding against *Schmidt*, and because *Ahlsleger* was tried and condemned with others, who were charged with different offences. His case ought to have been separately heard and decided. It is not apparent from the return, on what ground *Schmidt* was removed, whether because of the charges made against him, or because of his going away from the meeting, saying, he would have nothing more to do with them. If he was amoved for this declaration, he was improperly amoved, and it not being apparent on what ground he was removed, the court is of opinion his amotion was irregular and invalid

7th. That in the case of the *death, resignation,* or disqualification of an elder or trustee, it is not necessary eight days should intervene between the nomination and the election of his successor. Without now deciding, whether the language of the 5th section of the act of incorporation be merely directory or not, the 11th section of the same act, in my judgment, contemplates an entirely different case from that referred to in the fifth section. It provides, "that in the case of *death, resignation,* or disqualification, of any elder, or trustee,. the body corporate shall, without delay, proceed to the election of another person in his place, whereof due notice shall be given to the members of the corporation."

The fifth section provides for the annual elections, whilst the 11th section provides only for extraordinary elections ; and it being doubtful, to say the least of it, whether in proceeding under it, any nomination at all is required before the day of election. It provides, that "due notice" of the time of the election shall be given, but nothing in regard to nomination is said. The "body corporate," (that is the elders, trustees and members of the church,) shall, "without delay," proceed to the election. Looking to the language of the section, and the object it contemplates, I am of opinion, the legislature designed to confer on the body at large, both the right of nomination and of election, in the cases referred to in it.

By agreement of counsel for the respective parties, the 12th and 13th issues have been submitted to the court for its decision. It is clear beyond all doubt, from the testimony of the witnesses examined under the commission, that *Raine* admitted he had a wife living in *Germany*, and had one here also, by. both of whom he had children; and also that before the time he was married to the one in this country, he had lived with her as his wife. This being so, and there being no evidence to show he had been divorced from his first wife, the only question is, whether such admission is sufficient to establish the fact of adultery, and the fact of bigamy ? An examination of the authorities has fully satisfied me, that such admissions are sufficient, and I accordingly find for respondents on both issues. 2 *Greenl. on Ev.*, 377, where it is said, on the

trial of an indictment for polygamy or adultery, the declaration of the prisoner, that he was married to the alleged wife, is admissible, as sufficient evidence of the marriage, especially, if the marriage was in another country. There are some authorities opposed to this doctrine, to wit, 7. *John* 314 and 6 *Conn.*, 446, but the great majority of them sustain the doctrine as laid down in the text of *Greenleaf.* See *Regina vs. Upton*, 1 *C. & Kir.* 165. *Regina vs. Simmonsto*, 1 *C. & Kir.*, 164. 7 *Greenl.*, 57. *Truman's Case*, 1. *East.*, *P. C.*, 470. 2 *Wilson*, 339. 4 *Burrows*, 2057.

With these opinions, in any possible event, a peremptory *Mandamus* could only go to restore *Schmidt*, *Sen.*, and *Ahlsleger*. An examination, however, of the authorities, and a conference with my brother judges, has satisfied them as well as myself, that no writ can go in this case.

First, because the peremptory writ must follow the alternative writ, and the latter cannot be amended; and secondly, because more than one person cannot have one writ of *Mandamus*. On the first point there are numerous cases, but the one of the *King vs. the Mayor of Stafford*, 4 *D. & East.*, 689, places the matter beyond all question. See, also, 1 *Hill, N. Y. Rep.*, 55, 14 *L. Library*, 213, 214. In regard to the other question, the authorities are equally numerous and explicit. *Holt, C. J.*, in the case of *Andover*, 2 *Salk.*, 433, said: "Five persons cannot have one writ of *Mandamus* to be restored, for though the end of the writ is to do justice, yet the foundation is the wrong in turning them out, and the turning out of one, is not the turning out of another; nor can several persons join in one action on the case for a false return." The same doctrine is distinctly and unqualifiedly recognized as indisputable law in 2 *Salkeld*, 436. 1 *Wm. Blac. Rep.*, 60. 5 *Mod.*, 11. 12 *Petersdorf*, 507. *Selwynn, N. P.*, 1090, (last edition,) 12 *Mod.*, 332. 15 *Viner Abr. Mandamus*, 210, *(Q.)* 8 *Modern*, 209. There is nothing in our act of 1828, chapter 78, which changes this doctrine, and, however absurd it may be considered, it is still the law of *Maryland*, until the legislature alters it. There is nothing in the case of the *Baptist* church, decided by this court, in conflict with this doctrine. The ques-

tion was not there raised, nor was there any peremptory *Mandamus* issued. As regards the order of this court to the clerk, to issue the alternative writ, nothing can be deduced from it. The order was in compliance with the prayer of the relators, who have the right to have the alternative writ issued, as they may desire it, they taking the risk of its being correct, which question is to be determined on the final hearing of the case. Entertaining these views, the motion of relators must be overruled, and judgment entered up in favor of respondents on the verdict of the jury, and that they go without day, &c.

From this judgment the relators appealed to this court.

The cause was argued before DORSEY, SPENCE, MAGRUDER and MARTIN, J.

By SCHLEY, MAYER and R. JOHNSON for the appellants, who insisted :—

1st. None of the officers removed were removed by the proper authority, the congregation not having the power in this corporation either to amove or to disfranchise; that by the just construction of the charter, and of the constitution, and likewise, independently of these, by the common law applicable to corporations thus organised, the vestry, (the minister, elders and trustees,) had exclusively the right to try and amove, or disfranchise, in the several cases now presented, and that consent of any of the parties charged could not confer jurisdiction.

2nd. As regards *Raine*, he does not duly appear to have been found guilty of any of the charges brought against him ; and the necessary inference from the recitals of the return only, is, that the congregation decided only whether he should be expelled from office and membership.

3rd. As regards *Smith*, *Sen.*, it is uncertain on what charge he was tried, and of what found guilty; and nothing pretended to have been charged against him, was a sufficient ground for his amotion or disfranchisement ; nor did his declarations on leaving the meeting constitute a resignation, that could have been acted on as such. It was, however, not so recognised nor acted on.

4th. As to *Ahlsleger, Weis* and *George Kraft*, there were no sufficient charges to warrant amotion or disfranchisement; nor could the pretended trial of all together, avail in law as to either, their offences being of a several nature, if they are guilty of any.

5th. There was no effectual resignation of *Weis*. His proffered resignation was not accepted actually, nor by any necessary implication, and therefore did not operate. He was consequently out of office, if at all, by amotion and by judgment of the congregation.

6th. Notice to the accused in these corporation trials is necessary, and it must be personal, and no such notice appears, as to, at least, *Weis, Ahlsleger* and *Kraft.*

7th. If the members of the congregation were rightfully the judges on these impeachments, a special notice to all of them, of the meeting for the defined objects of the trials, was necessary; and that notice ought to have been personal to each, or by a mode equivalent to personal notice.

8th. The court must see that there has been a rightful and regular amotion or disfranchisement, and hence the order, if not the minute detail, of the proceeding, must be set out in the return, or cause shown, to the alternative *Mandamus*; no such fulness exists in the return. It does not, even in general terms, inform the court, that proof of the charges was given, and for aught that appears, (and as in case of *Weis, Ahlsleger, Craft* and *Smith, Sen.,* is to be inferred,) the silence of the parties was made proof of guilt, contrary to the law which in such cases does not so interpret silence of the accused.

9th. There was no due notice of the election, in the cases of the supposed vacancies of *Raine,* and *Smith, Jr's,* offices, that is, no sufficient interval between the nomination and election.

10th. The present corporation is one of integral parts, and at least, there must be a representation of each division of the officers of the corporation always extant, or the corporation will be in suspense; and for any effectual nomination, a majority must be in existence, and must meet of each class of the officers. This applies to the condition of the government of the corporation when all the elders were expelled, (*Smith Sen.,*

*G. Kraft, Weis* and *Ahlsleger*,) and to the nominations follow-
ing the resignation of *Smith, Sen.*, and the amotion of *Raine*
and that of the four elders.

11th. The proceedings of the *Erb* division of the congre-
gation, after the schism and the closing of the church, called
elections of minister, and elders and trustees, are of no effect; if
the complaint of the relators is well founded for them, the
authority they claim must be recognised and restored; and one
division cannot, any more than the antagonist to it, assert itself
to be the church or congregation, *de facto*, or ostensibly legiti-
mate.

12th. The alternative *Mandamus* is to be regarded as the
act of the court, on the *prima facie* case made by the petition,
and especially so where, as here, the relators submit themselves
to the judgment of the court, for a choice, in their behalf in
forms of relief. The court may then mould the peremptory
writ, according to the facts of the case, as unfolded by the return
and testimony. But at all events, they may so modify the lat-
ter writ, the case of such terms as are used in the present
application, which, for the alternative remedies suggested in
the application, refer necessarily to the results as they may
appear in the sequel of the case. It is only necessary that the
modification to be given to the peremptory *Mandamus*, in
contradistinction to the alternative writ, be consistent with the
allegations of the application, and within the issues naturally
arising from them.

13th. This is not a proceeding for offices of personal profit,
to be regained, but on its face pursuit, in behalf of the *corpora-
tion* or *congregation*, of its rights connected with its temporal
concerns; and to be represented only by its lawful officers.
Hence the members of the congregation, joined here with the
ousted officers, or rather the officers intruded upon, in claiming
relief by a restoration of the proper government of the corpora-
tion. Each officer need not, therefore, have a separate pro-
ceeding for himself. The character of this particular proceed-
ing, forbids such distinct action.

14th. The object of the *Mandamus* here, is but to restrain in-
terference, or arrest intrusion; and it is not strictly a case of

*restoration sought* against a body *de facto*, the corporation *legitimately in being*, and having *an authority*, *to an effective extent*, *legitimate*   Hence, the prayer of the application is proper, and within the view of the act of Assembly; and hence no enquiry is allowed into any circumstances charged, as derogatory to the complainants, and subsequent to their amotion, or not entering into this cause of attempted amotion.   On other grounds, besides, any such enquiry is foreign to this case.

15th. The verdict of the jury, upon the issue joined upon the fourteenth traverse of the relators, to the return of the respondents, was in favor of the relators, with nominal damages.   And the appellants will contend, that upon the true construction and effect of the act of 1828, chap. 78, the relators were entitled to a judgment, on said verdict for the damages so found, and their costs; and that on the basis of such verdict and judgment, a peremptory *writ of Mandamus* ought to have been granted, without delay, in the same manner as if said return had been adjudged insufficient.

16th. Even if the conjunction of the several persons who applied for the *Mandamus* in this case, be informal and irregular, yet, as the parties to whom it was proposed to be directed, had due notice of the application, by service of a copy of the petition, and the order of the court thereon passed, and did not shew cause against the issuing of said writ, as prayed by the said application, they must be considered as having waived this, and all other irregularities, if any, of a similar character.

17th. And further, in addition to the last mentioned point, the appellants will insist, that no matter of form not relied upon in the return to the alternative *Mandamus*, as cause against the issuing of a peremptory *Mandamus*, can avail the respondents as good cause against the issuing of a peremptory *Mandamus;* especially after the trial of the issue joined upon the traverses to said return.

18th. The appellants will further insist, that under the provisions of said act of 1828, chap. 78, and by the practice and common law of *Maryland*, a return to an alternative *Mandamus*, in order to avail as good cause against the issuing of a peremptory *Mandamus*, must be a true and complete, and per-

fect justification to all that it assumes to answer, and to which obedience is not yielded.    In case of insufficiency of the return, as to any part of the mandate of the writ, where the return assumes to answer the writ *in toto*, a peremptory *Mandamus* will issue in the terms of the alternative *Mandamus*, notwithstanding the partial cause shown; and if not to this extent, at least to such extent as the return is insufficient to justify a refusal to comply with the exigency of said writ.

By McMAHON, MEREDITH, and RICHARDSON, Atty. Gen. of Md., for the appellees, who controverted the appellant's points.

MAGRUDER, J., delivered the opinion of this court.

The appellants, in this case, are a number of individuals who claim to be members of " *The German Evangelical Reformed Church*, in the city of *Baltimore:*" incorporated by the act of 1797, chap. 52.    They charge, that the persons now in the offices of trustees and elders, were intruded into them; and they ask that others, who are supposed by the appellants to be the trustees and elders, be restored to the temporalities of the church; and for this purpose, that a *Mandamus* be issued.    The petition was filed 9th October 1845.

By the act of incorporation, those who then were, and who afterwards might become, members of the congregation, are made one body politic, with the usual privileges conferred by our legislature upon religious corporations.    The charter requires, that the male members, of the full age of twenty-one years, shall meet on the first Monday of January, then next, or within ten days thereafter; and on the first Monday of January, or within ten days thereafter; in every subsequent year, at their church: or such other place within the city of *Baltimore*, as may be appointed by the elders and trustees *for the time being*.    Notice is to be given by the president on the Sunday preceding the day of such meeting, to elect by ballot four of the members, to serve as elders for one year, and until another election is made, in virtue of this act; and also to elect four other members as trustees, to serve as aforesaid.    In another section of this act it is provided, that when elders and trustees are to be

appointed, the elders and trustees for the time being, shall, at least eight days before the day of election, nominate double the number of the elders, or trustees, so to be elected. The president for the time being, with the elders and trustees, are to meet to regulate the concerns of the body; to make by-laws, deemed necessary for the good conduct of the members, and management of their temporal concerns: such laws not being contrary to the constitution and laws of the State.

The charter provides, that at all meetings of the elders and trustees, the minister for the time being, shall be the president; and in the event of his death, absence or removal, the elders and trustees shall appoint one of their own body, who, during the absence, removal, or death of the minister, shall have all the authority and privileges of the president. The title to property then held for the use of the congregation, is vested in the trustees and elders; and the last two clauses provide, that in case of the death, resignation, or disqualification of any elder or trustee, the body corporate "shall, without delay, proceed to the election of another person in his place; whereof due notice shall be given by the president to the members of the corporation; and that, at a reasonable time before each and every election, the president shall nominate and appoint three persons to be judges thereof.

The appellants are styled by their adversaries, the discontented portion of the congregation; and in speaking of themselves, they give us to understand that a controversy arose in the congregation, and in consequence they separated into two divisions, one adhering to the minister, *Erb*, and the intruding elders and trustees, aforesaid, and two of the officers, whose title is not questioned; and the other, to which the appellants belonged, was kept in due and legal organization, by those elders and trustees who had been deposed.

The appellants complain of divers irregularities in the proceedings of those, who acted with the minister, in the trial and expulsion of members of the congregation, and also of officers. If those persons were here, complaining, in a proper form, of the treatment received by them, it would be difficult indeed to justify or excuse all the acts done by them, "for the good con

duct and government of the members." But the question before us is not, with what abuses of power and acts of injustice either of these divisions can be charged? but, who, at the time of this application, and at this time, can claim in virtue of the charter, the powers which it is said have been abused?

On the part of the appellants it is insisted, that the persons for whom they have been accustomed to vote, since the division spoken of in the petition took place, were, and are rightfully the persons, to exercise all the powers conferred upon the pastor, elders and trustees of the congregation, and that those in office during this time, the officers *de facto*, were intruders.

The difficulties to be encountered, seem to have suggested themselves to the petitioners themselves; since they are unable to tell us in what precise form relief can be extended to them. Obviously it is not sufficient to prove, that the election which took place in January 1843, was not holden in strict conformity to the charter, because it is to be presumed, as the charter directs it, that since the alleged irregularity, and in the years 1844, 1845, 1846 and 1847, elections of those officers, who are to be annually appointed, have taken place; and touching the validity of any of these subsequent elections, we are not now to enquire.

Surely those who were elected in January 1847, (if that election was in conformity to the charter,) are not to be dealt with by us as intruders, because it may appear, that the election in 1843 was not valid; and must have been so adjudged if its validity had been questioned, at a proper time, and in a proper way.

The question, perhaps, is one of life or death to this congregation, so far as its existence or prosperity depends upon the existence of the corporation. On both sides it is insisted, that each has attempted to keep up the succession; and each insists, that the other has been unsuccessful in its attempts; and if it be true, that for the alleged irregularities, the election by the petitioners, and their division, was void, it would be difficult to prove the existence of a legal body which can sue or be sued; or in any way assert title to the property belonging to this corporation.

It is true, the appellants contend, not only that every thing which has been done by their adversaries is illegal, but that they have taken care to do, as it ought to be done, every thing which must be done, in order to a valid election. But this, a reference to the charter will show to be utterly untrue.

It is assumed by both parties, that the election in January 1842, was a valid election. And it is also admitted, that the vestry then chosen, in the course of the term for which they were chosen, elected the defendant *Erb*, as pastor of this congregation, and to continue such until March 1843. During this term, then, the congregation was supplied with a pastor, who was undoubtedly its pastor, and would have been such, although there had been, from the time of his election, not one trustee, or elder in office, under the charter granted by the legislature.

A new election, according to the provisions of the charter, of the trustees and elders, was to be made in January 1843, and it seems to be conceded, that two elections, *de facto*, took place. The appellants say, that the election made by them, and those who acted with them, was valid. This, however, is impossible, because in order to an election in strict conformity to the charter, notice of that election must be given the Sunday previous, by the president of the vestry, who was then the *Rev. Mr. Erb*, himself, from whom the appellants had separated. By another clause, the same gentleman was the only person authorised to appoint the judges of the election; and the nomination of double the number of the trustees and elders, to be appointed in January 1843, was to be made by the president, elders and trustees, for the time being." This *organization* then, can claim nothing under this charter, in virtue of their organization. It seems to be taken for granted by the appellants, that their pastor, trustees and elders, are not in possession of the property of the corporation, or why this application? And if they are the vestry, *de jure*, a *Mandamus*, surely, is not the proper remedy. The object of a writ of *Mandamus*, we are told, "is not to supersede legal remedies, but only to supply the defect of them, by commanding the person to whom it is directed, to do something, which it is supposed

he is bound by his duty to do; which the party prosecuting the writ has a right to have done; and for which the applicant has no other specific legal remedy, or such other remedy has become obsolete." *Step. Nisi Prius*, 2291. Now, if the allegation be true, if by these petitioners, and others of the congregations, there was at the time of the application "lawful elders, trustees and ministers, as aforesaid,—of the said parsonage and school house, and stable; and of all other property of said corporation:"—surely the law gives them other and complete remedies against those who hold any of the property; and they need not the aid of a writ of *Mandamus.*

If any of their privileges as members of the corporation have been invaded, then, to be sure, the law ought to afford them an ample remedy; but the law, (see *Step.*, 2323,) says, that "one writ of *Mandamus* cannot issue, for the enforcement of separate claims."

The difficulty of discovering in what way relief is to be afforded to these petitioners, seems to suggest itself to them. They claim the rights of members of this congregation, and it no where appears that any of their rights, as members, have ever been questioned. If they be members, they may have been allowed to vote at the recent election of elders and trustees; and may have elected the very men, whom it is their desire to have for elders and trustees; or if they have not, the court cannot say that it is not owing to the circumstance, that although the election was in every respect regular, they were found to be in the minority. We cannot infer from the account, which they themselves give, and which is uncontroverted, they have not separated from the congregation, (which they had the power to do,) or that they would again be members, unless, in some way or other, they can be allowed to carry back with them, their own pastor, elders and trustees.

It is argued, that the acts of the vestry were not valid; and in order to be valid, they must be the acts of trustees and elders, *de jure*. But in *Vernon Society against Hill*, 6 *Cow.*, 23, it is said, that the trustees of a religious society, though they are irregularly elected, are in *colore officii;* and 1*st Hall N. Y. Rep.*, 191, we are told, that where the trustees of a religious society

sue, *colore officii*, the defendant cannot object to their right of recovery, upon the ground that they were not trustees, without showing, that proceedings have been instituted against them by government, and carried on to judgment. If it be alleged, that the present proceeding is the proceeding here alluded to; the obvious answer is, that it is too late now to question the legality of an election made several years ago, when the term for which the election was made, has long since expired. It cannot be pretended in this case, that the defendants are to be considered as trustees, *virtute electionis*, in 1843, when each party insists, that a valid election was made in 1844; and neither denies, that such an election took place in 1845, 1846, and 1847.

The good sense of the decisions before alluded to, must be obvious. A member elect of the legislature, is permitted to retain his seat, although it is disputed; and is permitted to vote, so long as he retains his seat; and by his single vote, measures of great importance may be carried or defeated. It may afterwards be decided, that although a member *de facto*, he was not *de jure:* that another candidate was duly elected, and was in truth the member *de jure.* Yet all the acts and votes of the former, until he was legally ousted, are as valid as they would be if his seat could not be contested.

The law ought to be strictly obeyed; but it is possible that its directions may not be strictly, and in all respects, complied with; and yet a fair election may be had, and all persons who have a right to object, may be satisfied with the result.

It may be thought that there are reasons of state, which justify these decisions, in regard to the election of delegates and senators, and governors, but do not furnish precedents for our guidance, in deciding cases like the one before us. To this it may be answered, that if they be right in the cases alluded to, then it must be absurd, and moreover, it would be wicked, to depart from such rules, in such cases as the present. Is it to be deemed of no importance in this christian land, that houses of public worship are to be shut up, because of objections like these? or, that the real christian portion of a congregation are prevented by injunction and *Mandamus*, from assembling

with their christian brethren, at their accustomed place of public devotion?

Corporate rights, and the little offices which the incorporating act create, may be deemed of value by some, who rather than be defeated in their wishes in regard to them, will disturb the peace of a congregation; but there are other privileges to which others are entitled, and of which they ought not to be deprived by groundless objections. The law selects the persons whose duty it is to give the notices, and make the nominations, which it directs. It ought not to punish others for their omissions of duty, when it is not in proof, that, by reason of these omissions, any object of the law in requiring them, is frustrated. If the individuals heretofore holding offices in this corporation, were not, *de jure*, they were, *de facto*, trustees and elders, and their official acts in 1843, must not be questioned at this late period.

But even if there was in the election in 1843 some irregularity, still, we are bound in deciding this case, to conclude that the elections took place, and that the persons elected were, *de facto*, trustees and elders for that year; gave the legal notice, and made the nominations required the ensuing year; and that the same was done subsequently: and if so, then ever since there have been trustees and elders *de jure*. If the law has been obeyed since the year 1843, and this we are not to question, an election of elders and trustees has been recently made:— and surely, the court can have no right to take from the persons in whom the law vests it, the property of this corporation; and give to others, who, perhaps, were the legal owners of it in the year 1842, even although they were wrongfully deprived of it then, but by a title which was determined the 1st of January 1843.

These views of the subject render it unnecessary to enquire, whether in the trial and condemnation of individual members and officers, in 1842, the pastor and his vestry acted according to law? Nor is it necessary to express an opinion upon many of the points decided by the court below. The judgment is affirmed, because, even if the parties were once entitled to it, it is too late now to order a peremptory *Mandamus*.

JUDGMENT AFFIRMED.